**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

BARNES JEWISH HOSPITAL
1 Barnes Jewish Hospital Plaza
Saint Louis, MO 63110-1003

and

HOSPITAL FOR SPECIAL SURGERY
535 East 70th Street
New York, NY 10021

and

MEMORIAL HERMANN - TEXAS MEDICAL CENTER
909 Frostwood
Houston, TX 77024

and

ST. JOSEPH HOSPITAL AND MEDICAL CENTER
703 Main Street
Paterson, NJ 07503

and

TRUMAN MEDICAL CENTER HOSPITAL HILL
2301 Holmes St
Kansas City, MO 64108

and

UH CLEVELAND MEDICAL CENTER
3605 Warrensville Center Rd.
Shaker Heights, OH 44122

and

UNIVERSITY OF MISSOURI HEALTH CARE
1 Hospital Drive
Columbia, MO 65212

Case No. 1:19-cv-3411

and

YALE-NEW HAVEN HOSPITAL
100 Church Street South
New Haven, CT 06519

                Plaintiffs,

vs.

ALEX M. AZAR II
Secretary of the United States Department of
Health and Human Services
200 Independence Avenue, S.W.
Washington, DC 20201

                Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND SUMS DUE UNDER THE MEDICARE ACT

### INTRODUCTION

1. This is a civil action brought to obtain judicial review of agency decisions regarding Medicare reimbursements rendered by Alex M. Azar II (the "Secretary" or "Defendant") in his official capacity as the Secretary of the United States Department of Health and Human Services. Plaintiffs are hospitals that participate in the Medicare program and qualify for direct graduate medical education ("DGME") payments for training medical residents. Plaintiffs seek an order setting aside the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii), which unlawfully reduces Plaintiffs' DGME payments by decreasing the number of residents that Plaintiffs may claim during a fiscal year.

2. Plaintiffs operate approved medical training programs for physician interns, residents, and fellows (collectively "residents"). Plaintiffs receive Medicare DGME payments, which are calculated, in part, based on the number of full-time equivalent ("FTE") residents that

train at each hospital.  If a resident exceeds the number of years designated as the "initial residency period" ("IRP"), the resident's time is weighted at 0.5, which means that the hospital may only count one-half of the resident's time that exceeds the IRP.  Also, the number of FTEs that a hospital may claim for payment in any given year is generally capped at the number of *unweighted* FTEs that it trained in its 1996 fiscal year.

3. The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute because it calculates a hospital's DGME payments using a weighted FTE cap rather than an unweighted FTE cap.  42 U.S.C. § 1395ww(h)(4)(F).  The effect of the unlawful regulation is to impose on Plaintiffs a weighting factor on residents that are within their IRP or, viewed differently, results in a reduction of greater than 0.5 for many residents who are beyond the IRP, which prevents Plaintiffs from claiming their full FTE caps authorized by statute.  Thus, the calculations of the current-year, prior-year, and penultimate-year weighted DGME FTEs (all three of which are elements of a hospital's DGME calculation in a given year) and the FTE caps are contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

4. The Secretary's application of this regulation violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (2012) (the "APA"); is contrary to the Medicare statute; is arbitrary, capricious, and an abuse of discretion; and otherwise contrary to law.  Accordingly, Plaintiffs asks this Court to reverse the Secretary's decisions and to order the Secretary to recalculate Plaintiffs' DGME payments as required by statute.

## JURISDICTION AND VENUE

5. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (2012) (the "Medicare statute"), which establishes the Medicare program, and the APA.

6. This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers the right to obtain expedited judicial review ("EJR") of any action involving "a question of law or regulations relevant to the matters in controversy" when the Secretary's Provider Reimbursement Review Board (the "Board") "determines . . . that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received." The Board granted EJR to Plaintiffs on October 31, 2019. Accordingly, this action is timely filed within the sixty-day limitations period established at 42 U.S.C. § 1395oo(f)(1).

7. Venue in this Court is proper under 42 U.S.C. § 1395oo(f)(1).

## PARTIES

8. Plaintiff Barnes Jewish Hospital is an academic medical center located in St. Louis, Missouri. Barnes Jewish Hospital participates in the Medicare program and has been assigned Medicare Provider Number 26-0032. Barnes Jewish Hospital operates graduate medical education programs and receives Medicare DGME payments. Barnes Jewish Hospital contests the Medicare reimbursement decision for its fiscal year ending December 31, 2015.

9. Plaintiff Hospital for Special Surgery is an academic medical center located in New York, New York. Hospital for Special Surgery participates in the Medicare program and has been assigned Medicare Provider Number 33-0270. Hospital for Special Surgery operates graduate medical education programs and receives Medicare DGME payments. Hospital for Special Surgery contests the Medicare reimbursement decision for its fiscal year ending December 31, 2015.

10. Plaintiff Memorial Hermann–Texas Medical Center is an academic medical center located in Houston, Texas. Memorial Hermann–Texas Medical Center participates in the

Medicare program and has been assigned Medicare Provider Number 45-0068.  Memorial Hermann–Texas Medical Center operates graduate medical education programs and receives Medicare DGME payments.  Memorial Hermann–Texas Medical Center contests the Medicare reimbursement decision for its fiscal year ending June 30, 2015.

11. Plaintiff St. Joseph Hospital and Medical Center is an academic medical center located in Patterson, New Jersey.  St. Joseph Hospital and Medical Center participates in the Medicare program and has been assigned Medicare Provider Number 31-0019.  St. Joseph Hospital and Medical Center operates graduate medical education programs and receives Medicare DGME payments.  St. Joseph Hospital and Medical Center contests the Medicare reimbursement decision for its fiscal year ending December 31, 2015.

12. Plaintiff Truman Medical Center Hospital Hill is an academic medical center located in Kansas City, Missouri.  Truman Medical Center Hospital Hill participates in the Medicare program and has been assigned Medicare Provider Number 26-0048.  Truman Medical Center Hospital Hill operates graduate medical education programs and receives Medicare DGME payments.  Truman Medical Center Hospital Hill contests the Medicare reimbursement decision for its fiscal year ending June 30, 2015.

13. Plaintiff UH Cleveland Medical Center is an academic medical center located in Shaker Heights, Ohio.  UH Cleveland Medical Center participates in the Medicare program and has been assigned Medicare Provider Number 36-0137.  UH Cleveland Medical Center operates graduate medical education programs and receives Medicare DGME payments.  UH Cleveland Medical Center contests the Medicare reimbursement decision for its fiscal year ending December 31, 2015.

14. Plaintiff University of Missouri Health Care is an academic medical center located in Columbia, Missouri. University of Missouri Health Care participates in the Medicare program and has been assigned Medicare Provider Number 26-0141. University of Missouri Health Care operates graduate medical education programs and receives Medicare DGME payments. University of Missouri Health Care contests the Medicare reimbursement decision for its fiscal year ending June 30, 2015.

15. Plaintiff Yale-New Haven Hospital is an academic medical center located in New Haven, Connecticut. Yale-New Haven Hospital participates in the Medicare program and has been assigned Medicare Provider Number 07-0022. Yale-New Haven Hospital operates graduate medical education programs and receives Medicare DGME payments. Yale-New Haven Hospital contests the Medicare reimbursement decision for its fiscal year ending September 30, 2015.

16. Defendant Alex M. Azar II is the Secretary of the Department of Health and Human Services and is the federal officer responsible for administering the Medicare program pursuant to the Social Security Act. Defendant is sued in his official capacity.

## BACKGROUND

**I.   The Medicare Program and Payment for Hospital Services**

17. Medicare is a public health insurance program that generally furnishes health benefits to participating individuals once they reach the age of 65. 42 U.S.C. § 1395c. The Secretary has delegated much of the responsibility for administering the Medicare program to the Centers for Medicare and Medicaid Services ("CMS"), which is a component of the Department of Health and Human Services.

18.   Under the Medicare statute, an eligible Medicare beneficiary is entitled to have payment made by Medicare on his or her behalf for, *inter alia*, inpatient and outpatient hospital services provided by a hospital participating in the Medicare program as a provider of health care services. *Id.* The Medicare program consists of four Parts: A, B, C, and D. Inpatient hospital services are paid under Part A of the Medicare statute. *Id.* § 1395d(a). Physician, hospital outpatient, and certain other services are paid under Medicare Part B. *Id.* § 1395k(a). Medicare Part C is an optional managed care program that pays for services that would otherwise be covered under Medicare Parts A and B. *Id.* §§ 1395w-21–1395w-29. Medicare Part D is an optional insurance program for prescription drugs. *Id.* §§ 1395w-101–1395w-154. This action concerns Medicare Part A.

## II.   Direct Graduate Medical Education

19.   The Medicare statute reimburses hospitals for the direct costs of graduate medical education. 42 U.S.C. § 1395ww(h). The DGME payment is calculated by multiplying a hospital's "patient load" times its "approved amount." 42 U.S.C. § 1395ww(h)(3)(A). The "patient load" is "the fraction of the total number of inpatient-bed-days . . . during the period which are attributable to patients with respect to whom payment may be made under [Medicare] part A." 42 U.S.C. § 1395ww(h)(3)(C). The "approved amount" is the product of a hospital's base-period per-resident amount ("PRA") and its weighted average number of FTE residents. *Id.* § 1395ww(h)(3)(B); 42 C.F.R. § 413.76(a). The weighted average number of FTEs is calculated using the average of "the actual full-time equivalent resident counts for the cost reporting period and the preceding two cost reporting periods." 42 U.S.C. § 1395ww(h)(4)(G). The following is the basic formula for calculating a hospital's DGME payment:

**PRA x (3-year FTE average) x (Medicare Patient Load) = DGME Payment**

20.     When determining the FTE count, residents who are beyond their IRP are weighted at 0.5, so that only half their time is counted. *Id.* § 1395ww(h)(4)(C). The IRP is defined as the period necessary for board eligibility in the resident's training program, not to exceed five years. *Id.* § 1395ww(h)(5)(F). Most, though not all, residents who are beyond the IRP are participating in post-residency fellowship programs.

21.     For cost reporting periods beginning on or after October 1, 1997, Congress established a cap on the number of *unweighted* DGME FTEs that a hospital may count, which is set at each hospital's number of unweighted FTEs during its most recent fiscal year that ended on or before December 31, 1996. *Id.* § 1395ww(h)(4)(F). Thus, a hospital's three-year FTE average in the DGME formula is limited by the number of unweighted FTEs that the hospital trained in its 1996 cost reporting period. The FTE cap is determined "before application of weighting factors" based on the IRP. *Id.* § 1395ww(h)(4)(F)(i).

22.     In 1997, the Secretary promulgated a regulation to implement the 1996 cap that calculates a *weighted* FTE cap to be used in the payment calculation:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 1997, exceeds the limit described in this paragraph (g) [i.e., the 1996 unweighted cap], the hospital's weighted FTE count (before application of the limit) will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.86(g)(4) (1997).

23.     When issuing this regulation, the Secretary stated, "We believe this proportional reduction in the hospital's unweighted FTE count is an equitable mechanism for implementing the statutory provision." Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1998 Rates, 62 Fed. Reg. 45,966, 46,005 (Aug. 29, 1997) (final rule with comment period); Medicare Program; Changes to the Hospital Inpatient

8

Prospective Payment Systems and Fiscal Year 1998 Rates, 63 Fed. Reg. 26,318, 26,330 (May 12, 1998) (final rule) (hereinafter "FY 1998 IPPS Rule").

24.     On August 1, 2001, the Secretary amended the regulation to determine separate weighted FTE caps for primary care residents and non-primary care residents, effective for cost reporting periods beginning on or after October 1, 2001.  42 C.F.R. § 413.86(g)(4)(iii) (2001); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Rates and Costs of Graduate Medical Education: Fiscal Year 2002 Rates, 66 Fed. Reg. 39,828, 39,893-96 (Aug. 1, 2001) (hereinafter the "FY 2002 IPPS Rule").  The Secretary did not change the formula for determining the weighted FTE cap.  Rather, the Secretary used the same methodology as in the 1997 rule to calculate a primary care weighted FTE cap and a non-primary care weighted FTE cap, which are then added together.  42 C.F.R. § 413.86(g)(4)(iii); FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

25.     In 2004, CMS redesignated the regulation from 42 C.F.R. § 413.86(g)(4)(iii) to 42 C.F.R. § 413.79(c)(2)(iii).  Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 46 Fed. Reg. 48,916, 49,112, 49,258-64 (Aug. 11, 2004).

26.     The regulation in effect during all fiscal years at issue in this action states as follows:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 2001 exceeds the limit described in this section [i.e., the 1996 unweighted cap], the hospital's weighted FTE count (before application of the limit) for primary care and obstetrics and gynecology residents and nonprimary care residents, respectively, will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.79(c)(2)(iii) (2014-2015).  This regulation is still in effect today.

9

27. The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) calculates the ratio of a hospital's unweighted FTE cap to the hospital's current-year unweighted FTE count. 42 C.F.R. § 413.79(c)(2)(ii)-(iii) (the "proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996"). This ratio represents the percentage by which the hospital's 1996 cap is above or below the current-year unweighted FTE count. The ratio is then multiplied by the current-year weighted FTE count (both residents within and beyond their IRP) to reduce the weighted count. *Id.* The resulting number is the weighted FTE cap. The Secretary's methodology is expressed in the following equation:

**(1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap**

The Secretary describes the result of this formula as "the hospital's reduced cap." FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

28. The regulation calculates a hospital's DGME payment based on its weighted FTEs, which may not exceed its weighted cap. 42 C.F.R. §§ 413.76(a), 413.79(c)(2)(iii).

### III. Medicare Cost Report Appeals

29. At the close of a hospital's fiscal year, it is required to submit to its designated Medicare Administrative Contractor ("MAC") a "cost report" showing both the costs incurred by the hospital during the fiscal year and the appropriate share of these costs to be apportioned to Medicare. 42 C.F.R. § 413.24(f) (2018). MACs are private companies under contract with the Secretary to pay Medicare claims and audit hospital cost reports, among other duties. 42 U.S.C. § 1395kk-1.

30. The MAC must analyze and audit the cost report and inform the hospital of a final determination of the amount of Medicare reimbursement through a Notice of Program

Reimbursement ("NPR"). 42 C.F.R. § 405.1803(a). A hospital's DGME payment is among the components of the final payment determination reported in the NPR.

31. A hospital may appeal a final determination of its Medicare reimbursement to the Board. 42 U.S.C. § 1395oo(a). The Board has jurisdiction over appeals from MAC determinations if the following requirements are met: (1) the hospital is dissatisfied with the final determination; (2) the amount in controversy is at least $10,000; and (3) the hospital requests a hearing within 180 days of receiving the final determination. *Id*.

32. A group of hospitals may appeal a common dispute to the Board if the following requirements are met: (1) the hospitals are dissatisfied with the Secretary's final determination; (2) the amount in controversy is, in the aggregate, at least $50,000; and (3) the hospitals request a hearing within 180 days of the Secretary's determinations. *Id*. § 1395oo(a), (b).

33. In addition, for group appeals, the matter at issue must involve "a single question of fact or interpretation of law, regulations, or CMS Ruling that is common to each provider in the group." 42 C.F.R. § 405.1837(a)(2).

34. The Board lacks the authority to decide the validity of a Medicare regulation. *Id*. § 405.1867. If a hospital (or group of hospitals) appeals an issue that involves a question that is beyond the Board's authority, the Board may authorize EJR of the case. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842.

35. The Board must grant EJR if it determines that (1) the Board does not have the authority to decide the legal question because the question is a challenge either to the constitutionality of a statute or to the substantive or procedural validity of a regulation or CMS Ruling; and (2) the Board has jurisdiction to hold a hearing on the specific matter at issue. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842(f)(1).

36.     If the Board issues an EJR decision, the CMS Administrator has the right to "review the Board's jurisdictional finding, but not the Board's authority determination."  42 C.F.R. § 405.1842(a)(3).  The Board's decision to grant EJR "becomes final and binding on the parties unless the decision is reversed, affirmed, modified, or remanded by the Administrator."  *Id*. § 405.1842(g)(1)(iii).

37.     If the Board grants the hospital's request for EJR, the hospital may seek judicial review of the action involving a question of law or regulations by commencing a civil action within sixty days of the date on which notification of the Board's determination is received.  42 U.S.C. § 1395oo(f)(l); 42 C.F.R. § 405.1842(g)(2).

## FACTS SPECIFIC TO THIS CASE

38.     Plaintiffs are teaching hospitals that receive Medicare DGME payments.  Plaintiffs all trained residents in their fiscal year 1996 ("FY 1996") cost reporting periods.  Accordingly, the Secretary established DGME FTE caps for each Plaintiff based on its FY 1996 resident FTE count.

39.     During the fiscal years at issue in this action, Plaintiffs' FTE counts exceeded their 1996 FTE caps.  Plaintiffs' FTE counts included residents who were both within and beyond the IRP.  The Secretary employed the methodology of the regulation at 42 C.F.R. § 413.79(c)(2)(iii) when applying the FTE weighting factors to Plaintiffs' DGME FTE caps.

40.     Each of the Plaintiffs timely filed appeals with the Secretary's Board following the receipt of their final determinations from their MACs, pursuant to 42 U.S.C. § 1395oo.

41.     Each Plaintiff joined a common group appeal contesting the application of 42 C.F.R. § 413.79(c)(2)(iii) to their cost reports.  The Board assigned case number 18-1739G to Plaintiffs' group appeal.

42. By letter dated October 1, 2019, Plaintiffs requested that the Board grant EJR on the question of the validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).

43. By letter dated October 31, 2019, the Board granted EJR. The Board concluded that it had jurisdiction over the matter for the subject years and lacked the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid.

44. The Board's October 31, 2019 EJR decision constitutes the Secretary's final agency action in Board case number 18-1739G.

45. By filing this Complaint, Plaintiffs have timely sought EJR under 42 U.S.C. § 1395oo(f)(1).

## COUNT I
## Violations of the Medicare Statute

46. Plaintiffs reallege and incorporate by reference paragraphs 1–45 as if fully set forth below.

47. The Secretary's regulation implementing the FTE cap and weighting factors is contrary to the Medicare statute because it determines the cap after application of weighting factors. 42 U.S.C. § 1395ww(h)(4)(F)(i). The effect of the Secretary's unlawful regulation is to impose on Plaintiffs weighting factors that result in reductions greater than 0.5 for many residents who are beyond the IRP, and the regulation prevents Plaintiffs from claiming and receiving reimbursement for their full unweighted FTE caps. 42 C.F.R. § 413.79(c)(2)(iii). Thus, the Secretary's calculations of Plaintiffs' current-year, prior-year, and penultimate-year weighted DGME FTEs and the FTE caps are contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

48. The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the

Medicare statute. First, the regulation creates a weighted 1996 FTE cap. The statute plainly requires the Secretary to determine the 1996 FTE cap "before application of weighting factors," which is an unweighted cap. 42 U.S.C. § 1395ww(h)(4)(F)(i). The Secretary instead applies a weighted FTE cap for the current year that is based on the ratio of the 1996 unweighted FTE count to the current year unweighted FTE count. The Secretary concedes that the regulation results in "the hospital's reduced cap," which is less than the 1996 FTE cap. FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894. The Secretary applies this weighted FTE cap as an absolute limit on the number of FTEs that can go into a hospital's DGME payment calculation. This weighted FTE cap is applied *after* application of the weighting factors to residents who are beyond the IRP in the current year, which violates Congress's directive to determine the cap *before* application of those weighting factors. 42 U.S.C. § 1395ww(h)(4)(F)(i).

49. Second, the Secretary's weighted FTE cap prevented Plaintiffs from ever reaching their 1996 unweighted FTE caps simply because they train fellows beyond their IRPs. In fact, the Secretary's regulation prevents any hospital that trains fellows beyond the IRP from reaching its 1996 FTE cap. The downward impact on the FTE count increases as a hospital trains more residents who are beyond the IRP.

50. The following example illustrates the unlawful impact of the Secretary's regulation. The example compares the application of 42 C.F.R. § 413.79(c)(2)(iii) to FTE statistics for Memorial Hermann Texas Medical Center ("Memorial Hermann") during its fiscal year ending June 30, 2015 and a hypothetical Hospital A that has the same 1996 FTE cap as Memorial Hermann and the same count of residents within their IRPs as Memorial Hermann. The only difference between the two hospitals is that Memorial Hermann trained fellows beyond the IRPs:

14

|  | Memorial Herman | Hospital A |
|---|---|---|
| 1996 Unweighted FTE Cap | 364.34 | 364.34 |
| Current Year Unweighted resident FTEs (within IPRs) | 391.36 | 391.36 |
| Current Year Unweighted fellow FTEs (beyond IRPs) | 110.50 | 0.00 |
| Current Year Total unweighted FTEs | 501.86 | 391.36 |
| Current Year Total weighted FTEs before application of cap | 446.61 | 391.36 |
| Current Year Total weighted FTEs after application of cap | 324.23 | 364.34 |

The Secretary's formula at 42 C.F.R § 413.79(c)(2)(iii) results in weighted FTE caps of 324.23 for Memorial Herman and 364.34 for Hospital A:

- 42 C.F.R. § 413.79(c)(2)(iii) formula:

  (1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap

- 42 C.F.R. § 413.79(c)(2)(iii) applied to Memorial Herman:

  364.34/501.86 x 446.61 = **324.23**

- 42 C.F.R. § 413.79(c)(2)(iii) applied to Hospital A:  364.34/391.36 x 391.36 = **364.34**

51.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) results in very different payments for Memorial Herman and Hospital A.  Because Hospital A does not train fellows beyond their IRPs, it receives a DGME payment based on its full 1996 FTE cap of 364.34 FTEs, even though its weighted FTEs are *lower* than Memorial Herman's weighted FTEs.  Hospital A would be paid for 40.11 FTEs *more* than Memorial Herman, even though their FTE caps are identical and Hospital A trained 55.25 *fewer* weighted FTEs (before application of weighted cap) than Memorial Herman.

52.     The Secretary's regulation results in Memorial Herman receiving far less reimbursement than hypothetical Hospital A simply because Memorial Herman trained 110.50 fellows in FY 2015.  Memorial Herman would receive far less reimbursement than Hospital A, even though it trained 110.50 more individuals than Hospital A trained.  The Medicare statute

requires that these fellows be weighted at 0.5, and the statute also requires that Memorial Herman is limited to its 1996 FTE cap of 364.34, but the Secretary has violated the statute by calculating an FTE count far below the 1996 FTE cap solely as a result of the Secretary's improper imposition of a weighted FTE cap.

53. All Plaintiffs are similarly situated to Memorial Herman. Each Plaintiff trained residents who were beyond their IRPs, and each Plaintiff trained a total number of residents that was higher than its unweighted 1996 FTE cap. Each Plaintiff is prevented from receiving DGME payments based on its 1996 FTE cap due to the Secretary's regulation.

54. All Plaintiffs suffered a downward payment adjustment that is greater than may be imposed by the statutory 0.5 weighting factor for training residents beyond the IRP.

55. By establishing the cap based on the hospital's unweighted FTE count for 1996, Congress entitled Plaintiffs to claim FTEs up to that cap. The Secretary's regulation renders this impossible because Plaintiffs trained residents who are beyond the IRP. The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute at 42 U.S.C. § 1395ww(h) and is, therefore, invalid.

## COUNT II
## Arbitrary and Capricious Agency Action

56. Plaintiffs reallege and incorporate by reference paragraphs 1–45 as if fully set forth below.

57. The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary and capricious and an abuse of discretion and is, therefore, invalid. 5 U.S.C. § 706(2). By establishing a cap on FTEs, Congress intended that hospitals be paid based on that cap. The Secretary's regulation prevents Plaintiffs from reaching their FTE caps and improperly treats similarly situated hospitals differently because hospitals with identical 1996 FTE caps and that have unweighted FTE counts

equal to their caps, will receive very different payments.  When promulgating the regulation at 42 C.F.R. § 413.79(c)(2)(ii)-(iii), the Secretary wholly failed to justify this differing treatment. *See Burlington N. and Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005).  The Secretary did not even acknowledge that its regulation would have such an inequitable effect.  FY 1998 IPPS Rule, 63 Fed. Reg. at 26,330.  Because the Secretary "entirely failed to consider an important aspect of the problem," the regulation is "arbitrary and capricious" and cannot stand.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully requests relief as follows:

1. A declaration by the Court that the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary, capricious, an abuse of discretion, and contrary to statutory law, and is therefore invalid.

2. A declaration by the Court that 42 U.S.C. § 1395ww(h) forbids the Secretary from imposing a weighted FTE cap.

3. A declaration by the Court that the Secretary must apply FTE weighting factors after applying the unweighted FTE cap as required by 42 U.S.C. § 1395ww(h).

4. An order from this Court requiring the Secretary to recalculate Plaintiffs' DGME payments consistent with the Medicare statute so that the Plaintiffs' FTE counts are weighted for residents beyond the IRP at 0.5 and are capped based on the number of residents trained in the most recent cost reporting periods ending on or before December 31, 1996.

5. An order from this Court requiring the Secretary to pay Plaintiffs interest on the payments resulting from the Court's orders, pursuant to 42 U.S.C. § 1395oo(f)(2).

6.  An order from this Court awarding Plaintiffs the costs and fees incurred in this litigation and granting such other relief in law and/or equity as this Court may deem just and proper.

                Respectfully submitted,

                /s/ Ronald S. Connelly
                Ronald S. Connelly
                D.C. Bar No. 488298
                POWERS PYLES SUTTER & VERVILLE, PC
                1501 M Street, N.W., 7th Floor
                Washington, DC 20005
                Tel. (202) 872-6762
                Fax (202) 785-1756
                Ron.Connelly@PowersLaw.com
                Attorney for Plaintiffs

Dated:  November 12, 2019